**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMES EADY,                                     )        CASE NO:    1:10-cv-00516
                                                )
          Plaintiff,                            )
                                                )
          vs.                                   )        MAGISTRATE JUDGE
                                                )        NANCY A. VECCHIARELLI
HANGER PROSTHETICS AND                          )
   ORTHOTICS, *et. al.*,                        )
                                                )        MEMORANDUM OF OPINION
          Defendant.                            )        AND ORDER, Doc. No. 37, 38

      This case is before the magistrate judge on consent.  Before the court are the motions of defendant,  Hanger Prosthetics and Orthotics, Inc. ("Hanger"), for summary judgment, Doc. No. 37, and for partial summary judgment as to damages, Doc. No. 38.  Plaintiff, James Eady ("Eady"), opposes both motions.  Doc. No. 46.  For the reasons given below, the court DENIES Hanger's motion for summary judgment and its motion for partial summary judgment as to damages.

I

      The court views the facts, as it must, in the light most favorable to Eady, the party opposing the motion for summary judgment.  Eady pleads or does not contest the following facts.

      Eady lost his right leg in an automobile accident in 1992, which required him to use a prosthetic leg.  Eady began patronizing Hanger for his prostheses in 1998.  In

2000 and 2004, Frank Zingales ("Zingales"),  a certified and licensed prosthetist employed by Hanger, fitted Eady's prosthetic leg.  In 2006, Matthew Manolio ("Manolio"), another certified and licensed prosthetist employed by Hanger, fitted Eady.

A prosthetist measures and fits a prosthesis.  The prosthetist measures the client's leg, submits the measurements to the fabricator, and fits the prosthetic leg to the client, making adjustments needed for a proper fit.  Fitting a prosthetic leg occurs in four stages.  In the initial evaluation, the prosthetist measures the foot, knee, circumference, and length of the patient's natural leg to ensure a proper fit.  The prosthetist sends these measurements to the fabricator.  During the second visit, the prosthetist fits a socket made by the technician to the client, changing the mold if it does not fit properly.  At the third appointment, the client wears and tests the prosthetic leg.  The prosthetist ensures that the prosthetic leg is the same length as the natural leg during this appointment by measuring their lengths with a tape measure or yardstick.  At the fourth visit, the prosthetist cosmetically finishes the prosthesis and again ensures that his measurements were correct and the prosthetic length is proper.  If either the fit or length is not correct, the prosthetist makes adjustments to the prosthesis to ensure that they are corrected.

Failure to fit a prosthetic leg properly may cause a client problems.  If the prosthesis departs as little as an eighth of an inch from the proper length, the client may experience an abnormal gait, back pain, and back problems.

Manolio fitted Eady for his prosthetic leg in 2006.  Manolio failed to measure Eady's leg or prosthesis at any stage of the fitting process.  Moreover, Manolio failed to measure Eady at any of six visits subsequent to Eady's fitting, including visits during

which Eady was beginning to suffer back pain.  Rather, Manolio visually estimated the comparative length of Eady's natural and prosthetic legs.  After making these visual estimates, Manolio did not make any adjustments to Eady's prosthesis.

Eady had a history of back trouble prior to his problematic prosthesis.  In December 2004, Al-Amin Khalil, M.D  ("Dr. Khalil") performed surgery on Eady to relieve lower back pain.  From 2004 to June 2008, Dr. Khalil treated Eady for pain.  From 2006 through 2008, Eady experienced increasing back problems and pain.  When Dr. Khalil's treatments were no longer as successful as expected, he referred Eady to Vinod Sahgal, M.D. ("Dr. Saghal"), for further treatment.  In 2008, Dr. Saghal discovered that Eady's prosthesis was too short.[1]

At present, Eady relies more on family members than he did before to get around and is nearing a point at which he will need a walker, rather than a cane, to ambulate, due to problems with balance.  He has difficulty tying his shoes, showering, going to the supermarket, and ascending or descending stairs.  He blames these limitations on back problems caused by his 2006 prosthesis.

II

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party,

---

[1] Eady contends that Hanger does not dispute that the prosthesis was too short.  Hanger asserts that it does not concede this point.  For purposes of summary judgment, the facts are viewed in the light most favorable to Eady.

after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ,"  *id.*, or by any other evidentiary material admissible at trial.  *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn

from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966).  In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.* This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant.  *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

III

Hanger moves for summary judgment, contending (1) Eady concedes he cannot prevail on a claim pursuant to the Ohio Products Liability Statute ("OPLA"); (2) if Eady does assert an OPLA claim, he cannot prevail on that claim because he fails to provide expert testimony to support that claim; (3) Eady cannot raise a claim of common law negligence now because he fails to properly plead such a claim in his complaint; (4) even if Eady has pleaded a negligence claim, he cannot prevail on such a claim because he has no expert opinion through which to establish the appropriate standard of care; and (5) Eady cannot prevail on a common law claim of negligence because

Eady fails to prove that his prosthesis was the proximate cause of his injuries.  The

court will examine each of these contentions in turn and Eady's response to them.

*A.      Whether Eady concedes that he cannot prevail on a claim pursuant to the OPLA
and whether he can prevail on such a claim*

Eady's complaint asserts a "First Claim for Relief," so denominated.  It does not

denominate a "Second Claim for Relief."  The "First Claim for Relief" reads in the

entirety of its relevant parts as follows:

> 3)      The Defendants . . . were at all times pertinent herein, individuals,
> corporations and/or other business entities who manufactured, supplied,
> distributed and/or sold the prosthetic devices more fully referred to below. . . .
> 4)      The Plaintiff brings this action against the Hanger and John Doe
> Defendants for product liability under Ohio Revised Code Section 2307.71 et.
> seq.  At all times pertinent herein, the Defendants were manufacturers or
> suppliers of the prosthetic device as defined by Ohio Revised Code Section
> 2307.71(I)(O).  Further these defendants were modifiers, creators, servicers,
> designers, manufacturers and/or suppliers fo the prosthetic device as these
> terms are defined by Ohio Revised Code Section 2307.71(I)(O).
> 5)      On or about June 15, 2008 it was discovered by Plaintiff that the Hanger
> and John Doe Defendants provided him a right leg prosthesis (hereinafter
> "prosthetic device") which was inappropriately measured, manufactured, created,
> distributed and/or sold to him.  Specifically, the prosthetic device was too short,
> causing the Plaintiff injury and damages.
> 6)      The prosthetic device, as manufactured and promulgated by the
> Defendants, was defective in manufacturing, construction and/or measurement
> pursuant to Ohio Revised Code Section 2307.74, and design or formulation
> pursuant to Ohio Revised Code Section 2307.75, defective due to inadequate
> warnings and instructions pursuant to Ohio Revised Code Section 2307.76 and
> defective because it did not conform to the representations made pursuant to
> Ohio Revised Code Section 2307.77.
> 7)      Each of the defective conditions of the prosthetic device, as enumerated
> above, was a singular and proximate cause of harm and damages to the Plaintiff
> pursuant to Ohio Revised Code Section 2307.73.
> 8)      Moreover, the Hanger and John Doe Defendants, each of them, were
> negligent in the design, measurement, manufacturing, inspection, and/or sale of
> the prosthetic device pursuant to the common law.

Complaint at 2-4.  The complaint continues by enumerating the physical, financial, and

psychological injuries which he alleges were proximately caused by the defendants'

6

negligence.  Eady's complaint states a clear and unequivocal claim for relief pursuant to the OPLA.

In his opposition brief, however, Eady states the following:

[T]he allegations of negligence against Hanger in this case do not involve the manufacture or design of a product as these terms are defined by *Ohio's Products Liability Statute*.  Rather, this case involves common law negligence of Hanger's Prosthetist, Matthew Manolio, in failing to properly measure and fit Plaintiff with a right leg prosthesis in the year 2006.

Plaintiff's Joint Brief in Opposition at 2.  Eady continues, "[A]s discovery was undertaken in this case, it became abundantly evident that Mr. Manolio's failure to properly fit, measure and apply the produced product (Plaintiff's right leg prosthesis) at the time of Plaintiff's appointments and fittings was actionable negligence, and not part of any product defect claim.  *Id.* at 3.

The court construes the assertions in Eady's opposition brief as an abandonment of his claims pursuant to the OPLA.  Consequently, Eady is not now asserting any claims pursuant to the OPLA.  For this reason, any discussion of whether he has conceded that he cannot win such claims or whether he can prevail on them is irrelevant.

*B.      Whether Eady properly asserts a claim for common law negligence*

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought . . . ."  Fed. R. Civ. P. 8(a)(2)-(3).  "Under the liberal pleading allowances of the Federal Rules of Civil Procedure, allegations made in

7

pleadings must be broadly construed."[2]  *Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 471 (6th Cir. 2007) (quoting *Hildebrand v. Bd. of Trs. of Mich. State Univ.,* 607 F.2d 705, 709 (6th Cir. 1979)).  The complaint must also be "construed so as to do justice."  Fed. R. Civ. P. 8(e).

Eady's complaint is not a model of clarity.  Nevertheless, ¶ 8 of the complaint, alleging "negligent . . . measurement . . . pursuant to the common law" is sufficient to place Hanger on notice that Eady was asserting a common law action in tort for negligence in measurement.  Hanger does not assert that it would be unjust to construe Eady's claim as asserting a common law tort for negligence.  Consequently, Hanger's claim that Eady has failed properly to assert a claim for common law negligence is not well-taken.

C.      *Whether Eady can prevail on a claim of negligence despite failing to present expert testimony regarding the relevant standard of care*

Hanger asserts that even if Eady has properly pleaded a common law claim for negligence, he has not presented any expert testimony to establish an appropriate standard of care against which to judge Hanger's conduct.  For this reason, Hanger argues, Eady cannot prevail on a common law claim for negligence.

To establish negligence under Ohio law, a plaintiff must show "the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom."  *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St. 3d 677, 680, 693 N.E.2d 271, 274

---

[2] The Supreme Court's slight alteration of the standard for a sufficient statement of the claim in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), and *Bell Atlantic Co. v. Twombly,* 550 U.S. 544 (2007), are not relevant here.  There is no allegation that the facts pleaded by Eady are insufficient to lend plausibility to his claim, nor does the court find his claim to be insufficient in this respect.

(1998).  The existence of a duty "depends on the foreseeability of the injury." *Menifee v. Ohio Welding Prods.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707, 710 (1984).  An injury is foreseeable if "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.*  For liability to attach, a defendant's failure to conform to this standard of care must be the actual and proximate cause of plaintiff's injuries. *Strother v. Hutchinson*, 67 Ohio St. 2d 282, 286-87, 423 N.E.2d 467, 470 (1981).

Hanger argues that Eady's claim must be adjudicated as a medical malpractice claim.  Such a claim requires a plaintiff to demonstrate that the defendant failed to perform his duty toward the plaintiff with the ordinary, skill, care, and diligence of a reasonable professional in a similar situation. *Bruni v. Tatsumi*, 46 Ohio St. 2d 127, 131, 346 N.E.2d 673, 677 (1976).  In litigating a medical malpractice claim, a plaintiff must establish the proper standard of care under the circumstances by means of expert testimony.  *Id.*, 46 Ohio St. 2d at 131-32, 346 N.E.2d at 677.  Failure to do so is generally fatal to a medical claim.  *Id.*, 46 Ohio St. 2d at 131, 346 N.E.2d at 677.  Because Eady has failed to present expert testimony to establish the appropriate standard of care in situations such as those here, Hanger contends, the court should dismiss Eady's cause of action for negligence.

Hanger errs.  Ohio Civ. R. 10(D)(2)(a) ("R. 10(D)") requires plaintiffs alleging medical malpractice to "include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability.  Affidavits of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of the Ohio Rules of Evidence."  The rule is a procedural rule, designed

to weed out meritless complaints.  *Fletcher v. Univ. Hosp. of Cleveland,* 120 Ohio St.3d 167, 170-72, 897 N.E.2d 147, 150-51 (2008).  While such a procedural rule is not otherwise relevant in this court, R. 10(D) nevertheless clarifies what Ohio considers to be a "medical claim," requiring expert testimony for establishing a standard of care.  Such claims are "defined in section 2305.113 of the Revised Code . . . ."  R. 10(D).  Ohio Rev. Code § 2305.113(E) defines "medical claim" as follows:

> [A]ny claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.

Actions against prosthetists are not included within the ambit of "medical claims." Consequently, the argument that Eady requires expert testimony to establish a standard of care because his claim is a medical claim is not well taken.

As a general rule, Ohio law does not require expert testimony to establish a standard of care in negligence cases:

> Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received. . . . Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid.

*State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 160 Ohio App. 3d 727, 733, 828 N.E.2d 701, 706 (2005) (quoting *Thompson v. Ohio Fuel Gas Co.*, 9 Ohio St. 2d 116, 117-118 (1967)).  Indeed, "[e]ven where not all of the factors involved as to how a standard of care should be exercised are obvious to, or readily understandable by, a lay

jury, affirmative evidence of the standard of care is not necessarily required." *State Farm*, 160 Ohio App. 3d at 733, 828 N.E.2d at 706 (quoting *Kemper v. Builder's Square, Inc.*, 109 Ohio App.3d 127, 132, 671 N.E.2d 1104, 1107 (1996)).  To the extent that a matter is within the jury's common knowledge or that a plaintiff presents other evidence sufficient to establish a standard of care, expert testimony is not required.  *State Farm*, 160 Ohio App. 3d at 733-34, 828 N.E.2d at 706-07.

In the instant case, Eady presented the testimony of Zingales and Manolio regarding the proper method of fitting a prosthetic leg at Hanger.  Zingales deposition at 9-20; Manolio deposition at 34-36.  The deposition of Hanger's expert, C. Michael Schuch ("Schuch"), also described the proper procedures generally for fitting a prosthetic leg.  Deposition of Schuch, Doc. No. 52, pp. 56-76.  This is sufficient information for a jury to determine whether Manolio's conduct in fitting Eady with a prosthetic leg in 2006 fell below an acceptable standard of care.  Consequently, Hanger's argument that Eady's claim for common law negligence should be dismissed because he has not presented any expert testimony necessary to establishing an appropriate standard of care is not well taken.

D.      *Whether Eady's claim for negligence should be dismissed because he fails to offer sufficient evidence from which a jury could conclude that Hanger's alleged negligence was the proximate cause of Eady's injuries*

Finally, Hanger argues that Eady cannot prevail on a claim of negligence because Eady fails to offer sufficient evidence from which a reasonable jury could conclude that Eady's prosthesis was the proximate cause of his injuries.  Eady replies that he has experienced gradually increasing pain since he was fitted with the prosthesis at issue, and cites the deposition testimony of Hanger's expert, Schuch, that

11

an improperly fitted prosthetic leg can cause back injury and pain.[3]  Schuch deposition

at 77-78, 100.

Under Ohio law, the longstanding rule as to proving medical causation is as

follows:

> Except as to questions of cause and effect which are so apparent as to be
> matters of common knowledge, the issue of causal connection between an injury
> and a specific subsequent physical disability involves a scientific inquiry and must
> be established by the opinion of medical witnesses competent to express such
> opinion.  In the absence of such medical opinion, it is error to refuse to withdraw
> that issue from the consideration of the jury.

*Darnell v. Eastman*, 23 Ohio St. 2d 13, 13, 261 N.E.2d 114, 114 (1970) (syllabus by the

court).  Expert testimony is particularly important "when there are preexisting conditions

involved or when the injury is latent and only manifests itself long after the initial

trauma."  *Antonoff v. Allstate Ins. Co.*, 2004 WL 2391540, at *5 (Ohio App. Oct. 19,

2004).  Moreover, when the "alleged injuries are internal and elusive, and are not

sufficiently observable, understandable, and comprehensible by the trier of fact . . . the

question of the causal connection between the alleged employment incident and the

alleged injuries are peculiarly within the scope of expert scientific inquiry."  *Wright v. City*

---

[3]  Eady offers the deposition testimony of Dr. Khalil to establish that the difference
in length between Eady's natural leg and his prosthetic leg was the cause of Eady's back
problems and pain.  Deposition of Dr. Khalil, Doc. No. 51, pp. 29-30.  Dr. Khalil treated
Eady on ten occasions between 2004 and 2008.  As noted earlier, in June 2008, Dr. Khalil
referred Eady to Dr. Saghal and did not treat Eady again.  After this referral, Dr. Saghal
allegedly discovered that Eady's prosthesis was too short.  When the parties deposed Dr.
Khalil and he testified that Eady's wrongly-fitted prosthesis was a cause of his back
problems, Dr. Khalil had not seen Eady for more than two years.  Moreover, there was no
suggestion at the time of Eady's last visit to Dr. Khalil that Eady's prosthetic leg was the
wrong length.  Consequently, Dr. Khalil's testimony that the alleged improper length of
Eady's prosthetic leg caused Eady's pain was not made in his role as treating physician,
but rather in his role as an expert an in the context of litigation.  Such testimony is expert
testimony subject to this court's case management plan requiring a written expert report.

*of Columbus*, 2006 WL 391823, at *5 (Ohio App. Feb. 10, 2006) (reviewing cases and affirming a directed verdict for defendant for failure to provide expert testimony to establish proximate cause); *see also Dean v. West*, 2000 WL 1335068, at *4 (Ohio App. Sept. 14, 2000) (finding that the causal connection between an accident and physical injuries and loss of sleep was not so apparent as to be matters of common knowledge and affirming a directed verdict for defendant for failure to provide expert testimony to establish proximate cause).  "Testimony suggesting the mere possibility of a causal connection between an accident and an injury is not sufficient."  *Leaman v. Coles*, 115 Ohio App. 3d 627, 630, 685 N.E.2d 1294, 1297 (1996).

In the instant case, Eady suffered from back problems prior to his 2006 fitting for a new prosthetic leg.  The alleged injuries developed over time, and the connection between the allegedly poorly-fitted prosthetic leg and the injuries may not be immediately apparent or within the experience and understanding of lay persons. However, the court will not determine at this point in the litigation whether the issue of causation in this case is within the understanding and experience of a lay person. Additional information and evidence is necessary.  Moreover, the court has given Eady until April 19, 2011 to submit an expert report on the issue of causation, and such an opinion may render this issue moot.

Because Eady may yet produce expert testimony regarding a causal connection between his allegedly mis-fitted prosthesis and pain from resulting back injury, and because Eady may be able to establish causation between the allegedly mis-fitted prosthesis and other pain without an expert opinion, Hanger's motion for summary judgment as to Eady's cause of action for pain resulting from Hanger's negligent fitting

13

of his prosthesis must be denied at this stage of the proceeding.  The court will reserve

ruling on the issue upon the renewal of such motions at trial.

IV

Hanger's motion for partial summary judgment as to damages must also be

denied.  This motion hinges upon Hanger's assertion that Eady cannot connect his

alleged pain to his allegedly mis-fitted prosthesis.  As described above, this assertion is

not necessarily correct.  Eady may produce an expert report by April 19, 2011 that

establishes causation between Eady's prosthesis, back injury, and resulting back pain.

Moreover, even without an expert, Eady may be able to establish causation between

the allegedly mis-fitted prosthesis and other sorts of pain.[4]  For these reasons, Hanger's

motion for partial summary judgment as to damages must be denied.

---

[4]While the motion for summary judgment was pending, Hanger filed a motion *in limine* to exclude evidence and argument regarding any damages other than back pain based upon a lack of evidence.  Doc. No. 82.  This court is not expressing any opinion at this time as to the merits of Hanger's motion to exclude evidence and argument regarding other damages.  Decision on that issue will be made either prior to, or during, trial based upon the evidence presented.

14

V

For the reasons given above, the court DENIES Hanger's motion for summary

judgment and DENIES Hanger's motion for partial summary judgment as to damages.

**IT IS SO ORDERED.**


Date:  April 21, 2011                                 s/ *Nancy A. Vecchiarelli*
                                                              Nancy A. Vecchiarelli
                                                              U.S. Magistrate Judge